1998 ME 190

**Paul R. LAMONICA**

v.

**Ladd HOLMES and Fireman's Fund Insurance Co.**

Supreme Judicial Court of Maine.

Argued May 6, 1998.
Decided July 28, 1998.

Ronald A. Ducharme, Christopher J. Cotnoir (orally), Wheeler & Arey, P.A., Waterville, for employee.

Daniel F. Gilligan, John P. Flynn (orally), Thomas Getchell, Troubh, Heisler & Piampiano, P.A., Portland, for Ladd Holmes, employer.

Lawrence Goodglass, Robinson & Kriger, Portland, for Town of Skowhegan, employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1] The employer, Ladd Holmes, appeals from a decision of the Workers' Compensation Board granting the employee's petition for restoration related to a 1977 injury. Although the employee suffered a subsequent injury in 1995 while employed by a second employer, the Board concluded that the subsequent injury was nonwork-related because the employee failed to give timely notice of that injury to preserve his workers' compensation claim against his second employer, 39–A M.R.S.A. § 301 (Supp.1997). Ladd Holmes contends that the employee's 1995 injury should have been treated as a subsequent work-related injury and that its liability should be reduced by the contribution of the second injury to the employee's resulting incapacity. We affirm.

[¶ 2] The employee, Paul R. Lamonica, suffered a work-related injury on June 9, 1977, while employed by Ladd Holmes, and a subsequent injury on March 3, 1995, while employed by the Town of Skowhegan. Lamonica filed petitions with the Board for benefits related to both injuries. The Board granted Lamonica's petitions for the 1977 injury, but denied his petition for award related to the 1995 injury because he failed to provide timely notice of his injury to the Town of Skowhegan. 39–A M.R.S.A. § 301 ("Proceedings for compensation under this Act, except as provided, may not be maintained unless a notice of the injury is given within 90 days after the date of injury."). The Board concluded further that, because

the 1995 injury is not compensable, it must be treated as a nonwork-injury for purposes of determining the liability of Ladd Holmes. Applying 39–A M.R.S.A. § 201(5),[1] the applicable provision when a work-injury combines with a subsequent nonwork-injury, the Board concluded that the 1995 injury was "causally connected" to the 1977 injury and, therefore, Ladd Holmes is fully liable for Lamonica's subsequent disability. *See Mushero v. Lincoln Pulp & Paper Co.,* 683 A.2d 504, 506 (Me.1996). We granted the employer's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1997).

[¶ 3] Ladd Holmes contends that, as a matter of common usage, the 1995 injury was a work-related injury because it arose out of and in the course of his employment with the Town of Skowhegan. Furthermore, because the 1995 injury was a subsequent work-injury, Ladd Holmes contends that it is entitled to an apportionment. As we have stated, however, "'the law of workers' compensation is uniquely statutory.'" *Beaulieu v. Maine Med. Ctr.,* 675 A.2d 110, 111–12 (Me.1996) (quoting *Wentzell v. Timberlands, Inc.,* 412 A.2d 1213, 1215 (Me.1980)). The basic entitlement to workers' compensation benefits under the Act, 39–A M.R.S.A. § 201(1) (Supp.1997), expressly defines a compensable injury with reference to the notice-of-injury provision set forth in 39–A M.R.S.A. § 301. For purposes of the Act, an injury is not "work-related" if the employee does not provide notice of the injury. Because this appeal involves a work-injury and a subsequent nonwork-injury, the controlling statutory provision is 39–A M.R.S.A. § 201(5).

[¶ 4] Even if we considered the 1995 injury as work-related, that would not alter our decision concerning an apportionment. The applicable statute when an employee suffers more than one work-injury is section 354, providing, in pertinent part:

**1. Applicability.** *When 2 or more occupational injuries occur, during either a single employment or successive employ-*

*ments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.*

**2. Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.

**3. Subrogation.** *Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may, in accordance with the rules adopted by the Superintendent of Insurance, file a request for appointment of an arbitrator to determine apportionment of liability among responsible insurers. ... Arbitration pursuant to this subsection is the exclusive means for resolving apportionment disputes among insurers and the decision of the arbitrator is conclusive and binding among all parties involved. ....*

39–A M.R.S.A. § 354 (Supp.1997) (emphasis added).

[¶ 5] Subparagraph 1 states that section 354 applies when "more than one insurer *is responsible* for that condition." 39–A M.R.S.A. § 354(1) (emphasis added). As we have stated, the right to an apportionment in workers' compensation cases is limited to a right of subrogation. *See Kennedy v. Brunswick Convalescent Ctr.,* 584 A.2d 678, 681 (Me.1991) (subsequent employer not entitled to apportionment after employee settled

---

1. The statute provides:
   If an employee suffers a nonwork-related injury or disease that is not causally connected to a previously compensable injury, the subsequent

   nonwork-related injury or disease is not compensable under this Act.
   39–A M.R.S.A. § 201(5).

claim against previous employer).[2] The subrogation principle has been carried forward into the new Act by subsection 2. Because there is only one insurer responsible for compensation in this case, there is no statutory basis for an apportionment.[3]

[¶ 6] The employer's remaining arguments are based more on policy than language of the Act. Ladd Holmes contends that, as a matter of fairness, employers should not be made fully liable for benefits resulting from multiple injuries merely because the employee, by his or her own inaction, failed to notify a subsequent employer. Ladd Holmes contends that "[t]here is no indication that the Legislature ever intended for such exceptional penalties to be borne by employers upon the fortuities of the employee's own compliance with the statutory notice provisions."

[¶ 7] We rejected a similar policy argument made by the employer in *Harding*, 647 A.2d at 1194. In that case, the employer sought an apportionment against an employee who suffered a subsequent injury while self-employed and not covered by the Act. *Id.* at 1193. The employer made the policy argument that "the self-employed employee who receives a subsequent injury arising from self-employment should not be entitled to look to a previous employer for full com-

pensation merely because that employee has failed to elect coverage under the Act." *Id.* at 1194. We rejected the employer's policy argument because it lacked support in the statutory language. *Id.* ("While the employer makes an interesting policy argument, such policy issues are more appropriately addressed to the Legislature.").

[¶ 8] Ladd suggests further that the Board's result will encourage employees to collude with subsequent employers in order to shift full liability to a prior employer. Such action, however, would not be without risk to the employee. A previous employer can only be made fully liable for a resulting incapacity when the subsequent nonwork-injury is "causally connected" to the previous work-injury. 39–A M.R.S.A. § 201(5); *Mushero*, 683 A.2d at 506. Any employee who colludes with a later employer to let the notice period lapse on a claim will therefore run the risk that the Board will find no causal connection between the injuries and deny full compensation against the previous employer.

[¶ 9] We find no support for the employer's remaining policy arguments in this appeal. The decision to include or exclude an injury within the ambit of the Workers' Compensation Act is as much a question of legis-

---

2. We do not agree with Ladd Holmes that our decision in *Murray v. City of Augusta*, 394 A.2d 1171 (Me.1978), stands for the rejection of subrogation as the basis for apportionment. *Id.* at 1175. The employee in *Murray* suffered two work-related injuries while employed by different employers. *Id.* at 1172–73. The employee brought a workers' compensation claim against his first employer, the City of Augusta, but failed to join his second employer, Bath Iron Works. *Id.* at 1173. We held that the award of benefits against the City of Augusta must be reduced to reflect the subsequent employer's proportionate share of responsibility for the disability, even though the second employer was not a party to the proceeding. *Id.* at 1175. Ladd Holmes contends that, pursuant to subrogation principles, the liability of Bath Iron Works should have been established prior to apportioning liability. *Murray*, however, was decided pursuant to judge-made apportionment principles and prior to the statutory apportionment provision limiting apportionment to a right of subrogation. P.L.1977, ch. 368, *codified as* 39 M.R.S.A. § 104–B, *repealed and replaced by* P.L.1991, ch. 885, § A–7. A–8; *see Robbins v. Bates Fabrics, Inc.*, 412 A.2d 374, 377–78 (Me.1980). Moreover, as we stated

more recently in *Harding v. Sheridan D. Smith, Inc.*, 647 A.2d 1193 (Me.1994), there was nothing in *Murray* to suggest that the employee was barred from bringing a claim against his second employer. As we stated in *Harding*, the employee in *Murray* "retained the right to seek supplemental workers' compensation recovery against the employer not joined in the original action." *Id.* at 1194

3. Ladd Holmes also contends that because subsection 354(2) provides that the most recent insurer "shall initially be responsible to the employee for all benefits payable under this Act," the first insurer is not responsible for any compensation unless and until the most recent insurer is made initially responsible for benefits. We have never interpreted the apportionment statute in the way suggested by the employer, *see Harding*, 647 A.2d at 1193–94 (recovery against first employer when second jury occurred in self-employment); *LaPointe v. United Eng'rs and Constructors*, 680 A.2d 458, 460 (Me.1996) (recovery against first employer when later Massachusetts employer not joined); and we see no reason to alter our consistent interpretation in the absence of express statutory authority to the contrary.

lative policy as it is a matter of actual work-relatedness. Indeed, workplace injuries are exempted from the Act for a variety of reasons that are unrelated to the actual connection of the injury to the work, for example, because the employee is a maritime employee, 39–A M.R.S.A. § 102(11)(A)(1) (Supp. 1997), a firefighter, 39–A M.R.S.A. § 102(11)(A)(2), or self-employed, 39–A M.R.S.A. § 102(11)(B), or because the employer is a small agricultural business and is exempted from the obligation to procure workers' compensation insurance, 39–A M.R.S.A. § 401(1) (Supp.1997). The determination whether an injury is "work-related" is ultimately a legislative decision, and we decline to enter into the thicket of deciding on a case-by-case basis whether otherwise noncompensable injuries should be regarded as "work-related" for purposes of apportionment. Accordingly, absent some expression of legislative intent to the contrary, we will continue to define a "work-related" injury with respect to whether it is compensable under the Act. *See, e.g., LaPointe v. United Eng'rs and Constructors,* 680 A.2d 458, 460–61 (Me.1996) (subsequent injury in other jurisdiction treated as nonwork-injury in the absence of a claim under Maine Act); *Harding,* 647 A.2d at 1194 (subsequent injury while self-employed and not covered by Act treated as nonwork-injury).[4]

The entry is:

Decision of the Workers' Compensation Board affirmed.

SAUFLEY and DANA, JJ., dissent.

SAUFLEY, Justice, with whom DANA, Justice, joins, dissenting.

[¶ 10] I respectfully dissent. I do not believe that the Legislature intended the result reached by the Court today, and I believe that the Court has ignored specific statutory language in reaching its conclusion.

[¶ 11] Because Lamonica declined to notify the Town of Skowhegan of his 1995 injury, I agree with the Court that the Town cannot be held responsible for payment to Lamonica. Relying on previous decisions for its conclusions, however, the Court overlooks that same notice requirement in allowing Lamonica to recover from his former employer that portion of his benefit which is related to his injury while in the Town's employment. The stark language of 39–A M.R.S.A. § 301 provides that "[p]roceedings for compensation under this Act, except as provided, *may not be maintained* unless a notice of the injury is given within 90 days after the date of injury." 39–A M.R.S.A. § 301 (Supp. 1997). Because Lamonica chose not to notify the Town of his injury within 90 days after he suffered a work-related injury, section 301 precludes Lamonica from seeking recovery for that portion of his injury from either the Town or his prior employer.

[¶ 12] Moreover, the Court declines to follow the teachings of *Murray v. City of Augusta,* 394 A.2d 1171, 1175 (Me.1978), the most similar case on point. When the employee there sought benefits from two employers but failed to join one of those employers, the Court did require a reduction of the benefits awarded to reflect the unjoined employer's share of responsibility. *Id.* Concluding that *Murray* was "decided pursuant to judge-made principles" prior to the enactment of the apportionment statute, 39 M.R.S.A. § 104–B, *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified as 39–A M.R.S.A. § 354 (Supp.1997)), the Court finds it inapplicable to the facts here.[5] Ironi-

---

4. Ladd Holmes also contends that the Board's conclusion that the two injuries were causally related was not based on competent evidence. Our review of factual determinations is deferential. *Smith v. Great Northern Paper, Inc.,* 636 A.2d 438, 439 (Me.1994). We conclude that there is competent evidence on the record to support the Board's findings.

5. Although *Murray* was distinguished by the Court in *Harding v. Sheridan D. Smith, Inc.,* 647 A.2d 1193, 1194 (Me.1994), because of the possibility in *Murray* of a later recovery against the employer not joined in the proceeding, the principles of separable responsibility of the employers articulated in *Murray* are nonetheless valid here. In contrast, *Harding* involved an employee who suffered a second injury while self-employed and not covered by the Act. *Harding,* 647 A.2d at 1194. *Harding* did not involve the failure to notify an employer that is so pivotal in this case, rather the result in *Harding* was driven by the policy considerations related to the Act's treatment of self-employment. Accordingly, the unique facts there do not support the applicabili-

cally, the Court then concludes that the apportionment statute does not apply to the facts at bar. While I agree that the provisions of section 104–B apply only where "more than one insurer is responsible" for an incapacitating condition, I do not agree that *Murray's* applicability is limited to situations expressly governed by the apportionment statute. As we have stated, we will not interpret statutory enactments as repealing our entrenched judicial interpretations of the Act in the absence of "express statutory language plainly showing a legislative intent to abrogate those prior decisions." *Bossie v. School Admin. Dist. No. 24*, 1997 ME 233, ¶ 8, 706 A.2d 578, 581–82 (citations omitted). No such express statutory language was incorporated into the apportionment statute. Pursuant to *Murray* and the plain language section 301, because Lamonica failed to preserve his claim against the Town for his 1995 injury, he should be limited to a recovery for that portion of his incapacity attributable to his injury in 1977.

[¶ 13] The Court compounds the error by accepting the Board's classification of the injury as "nonwork-related." Such a classification finds no support in the language of the statute. There is no factual dispute that Lamonica suffered the recent injury while employed by the Town, during his workday, while engaging in his ordinary employment activities there. Nor is there any dispute that the Town is a covered employer who would be required to pay benefits but for the employee's conscious decision not to provide the statutorily required notice. Nonetheless, because the statute expressly defines compensability with reference to notice, the Court somehow reaches the conclusion that "an injury is not 'work-related' if the employee does not provide notice of the injury ." The Court errs by equating the definition of a compensable injury with the concept of work-related injury, when neither section 301 nor any other statutory provision supports that conclusion.

[¶ 14] Finally, not only is the Court's conclusion not supported by statute, it consti-

tutes questionable public policy. Lamonica's own decision not to notify the Town has resulted, according to the Court's decision today, in a complete shifting of responsibility for a 1995 work-related injury to an employer responsible for Lamonica's injury 18 years ago. The Court too lightly dismisses the very real concern that an employee may now prevent his current employer from suffering the financial consequences of workplace injuries while still receiving complete benefits for those injuries. I believe the Court underestimates the problems that will result from its decision today. An employee may be highly motivated to protect a current employer from fiscal injury. Leaving in the hands of the employee and the current employer the opportunity to shift responsibility for a current injury entirely to a past employer is neither consistent with statutory language and intent nor sound public policy.

[¶ 15] I would vacate the decision of the Board.

---

ty of its holding to the case at bar, and the Court's reliance on *Harding* is misplaced.